**UNITED STATES of America,
Plaintiff,**

**v.**

**Thomas PARENTEAU, Defendant.**

**Case No. 2:08cr180(1).**

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 2, 2013.

Richard M. Rolwing, Jessica L. Nuzzelillo, Department of Justice, Tax Division, Deborah F. Sanders, Columbus, OH, Washington, DC, Sean B. O'Connell, Dept of Justice, Jill M. Cassara, Washington, OH, for Plaintiff.

Jon Paul Rion, Rion Rion and Rion LPA Inc., Dayton, OH, for Defendant.

## OPINION AND ORDER

MICHAEL H. WATSON, District Judge.

On September 16, 2013, the Court conducted a hearing on the ancillary petition of MKP Investments, LLC ("MKP"), ECF No. 420, and the Government's response, which is styled as a motion to amend the order of forfeiture, ECF No. 422. The purpose of the hearing was to determine whether the Government is entitled to a ruling that MKP is the alter ego of Thomas Parenteau or in the alternative a ruling substituting MKP's interest in the key man life insurance policies as an asset subject to forfeiture. Counsel for MKP and the Government appeared and participated in the hearing. MKP was afforded the opportunity to present evidence and submitted documents related to the key man life insurance policies. The Government relies on evidence adduced in the criminal trial and in related criminal cases.

The dispositive issue is whether MKP is the alter ego of Thomas Parenteau. MKP attempts to cast the issue differently: may the Government pierce the corporate veil? MKP maintains the Government cannot do so because it would involve "reverse" piercing of the corporate veil, a theory Ohio courts have never accepted.[1] Indeed, that is MKP's primary argument in this ancillary proceeding.

The same argument was rejected by the Sixth Circuit Court of Appeals, which noted the crucial distinction between the alter ego and veil piercing theories:

> Defendants argue that the bankruptcy court improperly applied reverse-piercing of the corporate veil, which has not been recognized in Ohio. To be sure, the Ohio courts have not adopted reverse-

piercing, despite acknowledging that it has been permitted by other courts in limited cases where the corporation was found to be the alter ego of its controlling shareholders and a creditor was seeking assets of the corporation to satisfy the debts of the controlling alter ego. *Geiger v. King,* 158 Ohio App.3d 288, 815 N.E.2d 683, 685 (2004). This court has explained, however, that veil piercing and alter ego concepts are distinct. The former asks a court to hold A vicariously liable for B's debts, while the latter asserts that A and B are the same entity and therefore liability is direct. *IUUA Local 600 v. Aguirre,* 410 F.3d 297, 302 (6th Cir.2005). Here, the bankruptcy court found that because Fisher and FDP were the same entity, FDP's inventory belonged to Fisher such that the transfer to Brennan was a transfer of an interest in property of the debtor.

In Ohio, the courts may consider a number of nonexclusive factors in deciding whether to disregard the corporate fiction under the alter ego theory. Those factors include: "(1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s)." *Taylor Steel, Inc. v. Keeton,* 417 F.3d 598, 605 (6th Cir. 2005); *see also Carter–Jones Lumber Co. v. LTV Steel Co.,* 237 F.3d 745, 749 (6th Cir.2001).

---

1. The parties appear to agree state law applies to determine property rights and the existence of corporate entities in this ancillary proceeding. *See United States v. 2525 Leroy Lane, W. Bloomfield, MI,* 910 F.2d 343, 353–54 (6th Cir.1990).

**980**

*In re Fisher,* 296 Fed.Appx. 494, 506 (6th Cir.2008).

The distinction applies here. The Court reads the Government's motion as requesting a ruling by the Court that MKP is the alter ego of Thomas Parenteau. Specifically, the Government does not seek to hold MKP vicariously liable for Thomas Parenteau's conduct; rather, it asks the Court to hold that MKP and Thomas Parenteau are the same entity.

■ "Under Ohio's alter ego doctrine, 'where the stock of a corporation is owned entirely by one party, and the party in interest is the stockholder, the fiction of the separate entity of the corporation may be disregarded where the ends of justice require it.' " *Id.* at 505–06 (quoting *Knight v. Burns,* 22 Ohio App. 482, 154 N.E. 345, 346 (1926)). MKP acknowledges that Thomas Parenteau is the sole member of MKP.

■ The ends of justice require the Court to disregard the fiction that MKP is a separate entity distinct from Thomas Parenteau. Several factors support this conclusion. First, there is no evidence that MKP observed corporate formalities, and what evidence does exist suggests such formalities were ignored. In particular, the evidence adduced during the criminal trial in this case and related cases shows Thomas Parenteau completely dominated MKP and used it as he pleased without any regard to corporate formalities. Second, Thomas Parenteau diverted funds from MKP for personal use inasmuch as MKP's funds were used to accomplish his elaborate fraudulent criminal schemes, all of which were for his personal gain. Notably, in that regard, the Court has held as a matter of law in a related

civil case that MKP was a RICO enterprise led by Thomas Parenteau:

MKP Investments LLC qualifies as a RICO "enterprise." Specifically, MKP operated as a *holding company for all of* Tom and Marsha Parenteau's other businesses, and was an ongoing organization for carrying out the numerous fraudulent schemes of Tom Parenteau and his co-conspirators. Indeed, MKP served as a conduit for all of Tom Parenteau's business activities, criminal and otherwise. Moreover, its members had established duties. Tom led the enterprise, while Marsha dutifully signed false documents.

*Marsha K. Parenteau v. IberiaBank, NA,* Case No. 2:07–cv–851, PAGEID # 2205–06, ECF No. 187. The evidence adduced during the criminal trial and in related cases overwhelmingly establishes that MKP was a mere tool for Thomas Parenteau's personal gain. Third, the same evidence also supports a finding that "the corporation was a mere facade for the operations of the dominant shareholder(s)." *In re Fisher,* 296 Fed.Appx. at 506. Fourth, MKP declined to introduce any corporate records at the hearing. Specifically, at the hearing, the Court inquired whether MKP observed corporate formalities. In response, a lawyer in the gallery indicated he had MKP's corporate records with him. MKP's counsel, however, expressly refrained from introducing them into evidence. Hence, while corporate records apparently exist, MKP's failure to introduce them precludes any inference that the records would support a finding that corporate formalities were observed or that the records otherwise contain evidence favorable to MKP.[2]

2. The Court makes this observation with the understanding that the Government bears the burden of establishing that MKP is the alter ego of Thomas Parenteau. *See Clinical Components, Inc. v. Leffler Indus.,* No. 95CA0085, 1997 WL 28246, at *2 (Ohio Ct.App. 9 Dist.

981

Neither side introduces evidence concerning the remaining factors, and in light of the more significant factors which have been established, the Court finds the remaining factors to be inconsequential.[3] The nonexclusive list of factors is but a means of measuring whether the "ends of justice" require the Court to disregard the fiction that MKP is a separate entity distinct from Thomas Parenteau. *See In re Fisher*, 296 Fed.Appx. at 505–06. In this case, the "personal use" and "mere facade" factors in particular weigh heavily in favor of finding that the ends of justice require the Court to disregard the corporate fiction that MKP and Thomas Parenteau are separate entities. In sum, the Court holds that the record conclusively establishes that MKP is the alter ego of Thomas Parenteau.

Having so held, the Court need not address whether MKP qualifies as a bona fide purchaser for value under the requirements of the forfeiture statutes. Very simply, since MKP and Thomas Parenteau are one and the same, MKP cannot be a bona fide purchaser under any set of circumstances. Moreover, Thomas Parenteau's interest in the policies has been forfeited to the Government. Because MKP is Thomas Parenteau, it logically follows that its interest in the policies was forfeited to the Government as well.

For the above reasons, the Court **HOLDS** that Petitioner MKP is the alter ego of Defendant Thomas Parenteau. Accordingly, the Court **DENIES** MKP's ancillary petition, ECF No. 420, and **GRANTS** the Government's motion to amend the preliminary and final orders of forfeiture to reflect that any and all interest MKP has in the key man life insurance policies was **FORFEITED** to the Government. ECF No. 422.

**IT IS SO ORDERED.**

Jan. 22, 1997) (placing burden of proof on creditor to establish alter ago).

3. The remaining factors have greater relevance in cases like *In re Fisher,* in which a creditor of the shareholder seeks relief from the corporation under the alter ego theory.